**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **EDWARD LOFTUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| **OPTUM SERVICES, INC.,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendant.** | ) | |

**<u>COMPLAINT</u>**

**STATEMENT OF JURISDICTION**

1.      The jurisdiction of this Court is invoked pursuant to its general original jurisdiction and under other statutory authority. This is a suit authorized and instituted pursuant to 42 U.S.C. § 2000e, et seq., known as Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); and the Alabama Age Discrimination in Employment Act.

2.      This Court has original jurisdiction, pursuant to 28 U.S.C. § 1331, as this civil action arises under the laws of the United States cited above. This Court also has original jurisdiction, pursuant to 28 U.S.C. § 1343(a); as this civil action seeks to secure the protection of, and redress the deprivation of, rights secured by Title VII and the Alabama Age Discrimination in Employment Act, providing for injunctive and other relief against discrimination.

3.      Venue is proper in this district, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to the claim occurred in Shelby County located in this judicial district.

4.      Plaintiff has fulfilled all conditions precedent to the institution of this action, as required under Title VII.

**STATEMENT OF THE PARTIES**

5.      Plaintiff Edward Loftus (hereinafter referred to as "Plaintiff" or "Loftus") is a Caucasian male over the age of nineteen (19) years. He is a resident of the State of Alabama. At all times relevant to this Complaint, Plaintiff was an employee of the named defendant.

6.      Defendant Optum Services, Inc. (hereinafter "Defendant" or "Optum") is an entity subject to suit under Title VII and the Alabama Age Discrimination in Employment Act. At all times relevant herein, Defendant was Plaintiff's employer.

**STATEMENT OF THE FACTS**

7.      Plaintiff is a Caucasian male over the age of forty (40). Plaintiff began working for UnitedHealth Group on or around September 3, 1996, as a Utilization Review Coordinator. Plaintiff held several roles in UnitedHealth Group, eventually moving to Optum. Optum is a subsidiary of the UnitedHealth Group family of companies. Optum provides technology-focused services to the health care industry in the areas of data and analytics, pharmacy benefit management, population health management, network management and care delivery, to make the health system work better for everyone.

8.      Due to Plaintiff's hard work and dedication, he earned the title of Regional Vice President of Contracting and Provider Relations ("RVP").  Plaintiff was one (1) of only five (5) RVPs, and the only male RVP. As part of Plaintiff's duties, he was assigned the Southeast Region which consisted of sixteen (16) states, including Alabama.

9.      Unfortunately, despite Plaintiff's high performance, he was restricted from hiring employees at a higher grade level. More specifically, on at least five (5) occasions, Plaintiff was denied the opportunity to upgrade a position. This meant that Plaintiff was essentially handicapped from being able to recruit and retain higher level staff, which placed Plaintiff at a disadvantage as

2

compared to his similarly situated female counterparts. To elaborate, Plaintiff's similarly situated female counterparts—Melissa Razzano, Jackie Leary, Shelcy Andrews, Kim Cox, and Kimberly Davis—were granted annual promotions and position upgrades for their employees, which allowed them all the opportunity to recruit and retain higher level staff. The decisionmaker for this disparity either was or included Senior Vice President Jeanne Schutter (who Plaintiff directly reported to) and Human Resources Director Chelsea Barkel, both female.

10.    Sadly, despite Plaintiff's multiple complaints, the disparity remained. In or around October, 2022, Plaintiff's region was yet again at a disadvantage as compared to his similarly situated female counterparts. More specifically, Plaintiff was denied help in recruitment efforts by management, despite management facilitating recruitment assistance to other regions that were run by his similarly situated female counterparts. This was yet another action that Plaintiff felt was due to his gender.

11.    However, consistently treating Plaintiff less favorably than his similarly situated female counterparts was not the only example of Optum's discriminatory tendencies towards males. To elaborate, in 2023, Schutter forced Plaintiff to lay-off a male employee, despite several female employees performing worse. In fact, across the nation, only two (2) employees were affected and both were males.

12.    Due to the continuing disparate treatment, Plaintiff complained to Barkel and Schutter on many occasions that he felt he was being treated less favorably than his similarly situated female counterparts. Specifically, Plaintiff expressed his concerns as it related to the denial of annual promotions and upgrades, which Plaintiff felt placed him at a disadvantage as it related to his similarly situated female counterparts. Indeed, the last time Plaintiff complained about the

disparity or otherwise engaged in protected activity was in or near late-September to early-October, 2023.

13.     Unfortunately for Plaintiff, these continual complaints were placing a target on his back. Consequently, once Optum was presented with the opportune moment, it pulled the trigger to terminate Plaintiff's employment—even if it meant using Plaintiff as a scapegoat to cover up the true discriminatory and retaliatory motive.

14.     More specifically, in or near late-October, 2023 (just a few weeks after Plaintiff's last engagement in protected activity), Plaintiff was made aware by his subordinate, Paul Austin, that there were issues surrounding a female employee named Deanna Weidner. Austin informed Plaintiff that Weidner was to receive a pending lateral offer. Paul was unaware that Weidner was interviewing internally which is a requirement within UnitedHealth Group.

15.     Plaintiff then informed Schutter of Austin's comments, as was part of his duties and responsibilities, as Optum was still considering making the offer to Weidner. Schutter acknowledged receipt of Plaintiff's message and Plaintiff did not hear anything further until about one (1) week later.

16.     Also, around this same time period, Weidner had reached out to Plaintiff directly, complaining about Austin's discriminatory and retaliatory behavior towards her. Plaintiff promptly responded that he would be committed to helping improve her work experience and encouraged Weidner to bring any further concerns to him.

17.     About a couple of days later, on or around November 3, 2023, Jacqueline Leary reached out to Plaintiff and informed him that they were considering Weidner for that offer and wanted to know if Plaintiff thought she would be a "good fit" for the role. As Plaintiff was traveling, he spoke with Leary via telephone and informed her that he did not have an opinion of

Weidner because he had not had the opportunity to work with her. However, Plaintiff let Leary know Austin's concerns about Weidner. Leary then stated to Plaintiff that they were not offering Weidner a position.

18.     After Weidner was not offered the position, she complained that Austin had essentially sabotaged her and prevented her from getting the role. Based on the complaint Weidner made about Austin, Plaintiff was interviewed by management about the circumstances surrounding Weidner's offer. Plaintiff reiterated his previous discussions with Austin, Schutter, and Leary. On several occasions as well, Plaintiff also stated his belief that Schutter was the one who prevented Weidner's lateral transfer.

19.     After this, Austin informed Plaintiff that Weidner's recent absences were negatively impacting his team. So, once again, Plaintiff followed his responsibilities and informed Barkel and Schutter of Austin's complaints.

20.     The very next day (and three (3) days after he expressed his belief in an email to Reba Mendoza and Chelsey Barkel that Schutter was the one who prevented Weider's transfer), Plaintiff was called into a meeting with both Schutter and Barkel, where his employment was immediately terminated. Despite asking why, Plaintiff was not given a reason for the termination of his almost thirty (30) year employment with Optum.

21.     Only after Plaintiff began formally complaining about his termination, did Optum provide a reason: "violation of the Company's Non-Retaliation Policy and his violation of the Code of Conduct by being untruthful in the investigation into [Weidner's] complaint." However, this *post hoc* reason is pretext. Indeed, at no point did Plaintiff take any form of retaliatory action against Weidner—in fact, he welcomed Weidner to relay any concerns she had about anyone to him directly, which Weidner appreciated. Further, at no point was Plaintiff untruthful as it related

5

to Weidner's complaint. Plaintiff continued to relay the same information that was brought to him each time he was questioned. The reality is, Optum was looking for a way to get rid of Plaintiff due to his continual complaints of the rampant gender discrimination. Once the opportunity presented itself, Optum took it. Notably, Optum replaced Plaintiff with a lesser qualified female who was substantially younger than he, clearly illustrating the pretext behind its termination reason.

**FIRST CAUSE OF ACTION**
**Gender Discrimination—Disparate Treatment**
**under 42 U.S.C. § 2000e, et seq.**

22.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-21 with the same force and effect as if fully set forth herein and further states as follows:

23.     Plaintiff is a Caucasian male over the age of forty (40).

24.     Plaintiff experienced continual gender discrimination during his employment with Optum. More specifically, despite Plaintiff's high performance, he was restricted was hiring employees at a higher grade level. More specifically, on at least five (5) occasions, Plaintiff was denied the opportunity to upgrade a position. This meant that Plaintiff was essentially handicapped from being able to recruit and retain higher level staff, which placed Plaintiff at a disadvantage as compared to his similarly situated female counterparts. To elaborate, Plaintiff's similarly situated female counterparts—Melissa Razzano, Jackie Leary, Shelcy Andrews, Kim Cox, and Kimberly Davis—were granted annual promotions and position upgrades which allowed them all the opportunity to recruit and retain higher level staff. The decisionmaker for this disparity was Senior Vice President Jeanne Shutter (who Plaintiff directly reported to) and Human Resources Director Chelsea Barkel, both female.

25.     In addition, in or around October, 2022, Plaintiff's region was yet again at a disadvantage as it compared to his similarly situated female counterparts. More specifically, Plaintiff was denied help in recruitment efforts by management, despite management facilitating recruitment assistance to other regions who were run by his similarly situated female counterparts. This was yet another action that Plaintiff felt was due to his gender.

26.     Moreover, Optum terminated Plaintiff's employment, while allowing similarly situated female employees who engaged in the same conduct Plaintiff was accused of to continue working. Additionally, Plaintiff was replaced by a less qualified female employer who was substantially younger than he.

27.     Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII.

28.     As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**SECOND CAUSE OF ACTION**
**Retaliation**
**under 42 U.S.C. § 2000e, et seq.**

29.     Plaintiff re-alleges and incorporates by reference paragraph nos. 7-21 with the same force and effect as if fully set forth herein and further states as follows:

30.     Plaintiff had a good faith, reasonable belief that he was being treated less favorably than his female counterparts.

7

31.     Plaintiff engaged in protected activity on multiple occasions by means of reporting the disparate treatment on many occasions. However, it was to no avail. The last time Plaintiff complained about gender discrimination was in or near late-September to early-October, 2023.

32.     Not only did Optum fail to take any sort of remedial or corrective action but decided to terminate Plaintiff's employment approximately two (2) months after his last protected complaint.

33.     To elaborate, Deanna Weidner, a female employee, had filed two (2) complaints against Plaintiff's direct report, Paul Austin, a male employee. The first complaint was based on what Weidner perceived as Austin's discriminatory behavior towards her. The second complaint was based on Weidner not getting the lateral position for which she believed she was qualified.

34.     More specifically, in or near late-October, 2023 (just a few weeks after Plaintiff's last engagement in protected activity), Plaintiff was made aware by his subordinate, Paul Austin, that there were issues surrounding a female employee named Deanna Weidner. Austin informed Plaintiff that Weidner was to receive a pending lateral offer. Paul was unaware that Weidner was interviewing internally which is a requirement within UnitedHealth Group.

35.     Plaintiff then informed Schutter of Austin's comments, as was part of his duties and responsibilities, as Optum was still considering making the offer to Weidner. Schutter acknowledged receipt of Plaintiff's message and Plaintiff did not hear anything further until about one (1) week later.

36.     In the meantime, Weidner had actually reached out to Plaintiff directly, complaining about Austin's discriminatory and retaliatory behavior towards her. Plaintiff promptly responded that he would be committed to helping improve her work experience and encouraged Weidner to bring any further concerns to him.

37.     About a couple of days later, on or around November 3, 2023, Jacqueline Leary reached out to Plaintiff and informed him that they were considering Weidner for that offer and wanted to know if Plaintiff thought she would be a "good fit" for the role. As Plaintiff was traveling, he spoke with Leary via telephone and informed her that he did not have an opinion of Weidner because he had not had the opportunity to work with her. However, Plaintiff let Leary know Austin's concerns about Weidner, in an effort to be fully transparent with management. Leary then stated to Plaintiff that they were not offering Weidner a position.

38.     After Weidner was not offered the position, she complained that Austin had essentially sabotaged her and prevented her from getting the role. Based on the complaint Weidner made about Austin, Plaintiff was interviewed by management about the circumstances surrounding Weidner's offer. Plaintiff reiterated his previous discussions with Austin, Schutter, and Leary. Plaintiff also stated his belief that Schutter was the one who prevented Weidner's lateral transfer.

39.     After this, Austin informed Plaintiff that Weidner's recent absences were negatively impacting his team. So, once again, Plaintiff followed his responsibilities and informed Barkel and Schutter of Austin's complaints.

40.     The very next day (and three (3) days after he expressed his belief in an email to Reba Mendoza and Chelsey Barkel that Schutter was the one who prevented Weider's transfer), Plaintiff was called into a meeting with both Schutter and Barkel, where his employment was immediately terminated. Despite asking why, Plaintiff was not given a reason for the termination of his almost thirty (30) year employment with Optum.

41.     Only after Plaintiff began formally complaining about his termination, did Optum provide a reason: "violation of the Company's Non-Retaliation Policy and his violation of the Code of Conduct by being untruthful in the investigation into [Weidner's] complaint." However,

9

this *post hoc* reason is pretext. Indeed, at no point did Plaintiff take any form of retaliatory action against Weidner—in fact, he welcomed Weidner to relay any concerns she had about anyone to him directly, which Weidner appreciated. Further, at no point was Plaintiff untruthful as it related to Weidner's complaint. Plaintiff continued to relay the same information that was brought to him each time he was questioned. The reality is, Optum was looking for a way to get rid of Plaintiff due to his continual complaints of the rampant gender discrimination. Once the opportunity presented itself, Optum took it.

42.     Defendant, through the conduct of its agents, has violated Plaintiff's rights under Title VII.

43.     As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**THIRD CAUSE OF ACTION**
**Age Discrimination**
**under the Alabama Age Discrimination in Employment Act**

44.     A Plaintiff re-alleges and incorporates by reference paragraph nos. 7-21 with the same force and effect as if fully set forth herein and further states as follows:

45.     Plaintiff is over forty (40) years of age.

46.     At all times relevant to this Complaint, Plaintiff was qualified for his position.

47.     Plaintiff suffered an adverse employment action when he was terminated from his position.

48.     Plaintiff was replaced by a female significantly younger than he.

10

49.     Defendant, through the conduct of its agents, has violated Plaintiff's rights under the Alabama Age Discrimination in Employment Act.

50.     As a result of Defendant's actions, Plaintiff has suffered harm, including but not limited to, loss of employment opportunities, compensation and other benefits and conditions of employment. Additionally, Plaintiff has suffered injury including stress, humiliation, embarrassment, inconvenience, mental anguish and suffering, and loss of enjoyment of life.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully prays this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.     Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination and retaliation by Defendant are violative of the rights of Plaintiff as secured by Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended, 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991; and the Alabama Age Discrimination in Employment Act.

2.     Grant Plaintiff a permanent injunction enjoining Defendant, its respective agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate Title VII of the Act of Congress known as the "Civil Rights Act of 1964," as amended," 42 U.S.C. § 2000e, et seq., the Civil Rights Act of 1991; and the Alabama Age Discrimination in Employment Act.

3.     Enter an Order requiring Defendant to make Plaintiff whole by awarding Plaintiff back pay (plus interest), reinstatement or front pay in lieu thereof, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages.

4.      Plaintiff further prays for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this litigation.

5.      Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief, is the only means of securing adequate relief.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY
ON ALL ISSUES TRIABLE BY JURY**

Respectfully submitted,

*/s/Nicki Lawsen*
Sidney Jackson
Samuel Fisher
Nicki Lawsen
*Attorneys for the Plaintiff*
**Wiggins, Childs, Pantazis, Fisher
& Goldfarb, LLC**
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
sjackson@wigginschilds.com
sf@wigginschilds.com
nlawsen@wigginschilds.com