# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **EDWARD LOFTUS,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 2:25-cv-607-HDM** |
| **OPTUM SERVICES, INC.,** | |
| **Defendant.** | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Edward Loftus ("Loftus") sues his former employer, Defendant Optum Services, Inc. ("Optum"), alleging discrimination and retaliation based on his age and gender. (Doc. 1). This matter is before the court on Optum's fully briefed Motion to Compel Arbitration, (docs. 7; 17; 20), as well as Loftus's Motion for Discovery Related to Arbitration, (doc. 16). For all of the reasons set forth below, Optum's Motion to Compel Arbitration is due to be **GRANTED** and Loftus's Motion for Discovery Related to Arbitration is due to be **DENIED.**

## BACKGROUND

The court does not address the substantive merits of Loftus's claims and sets out only those allegations necessary to resolve Optum's Motion to Compel Arbitration.

A. Loftus's Underlying Claims

Loftus is a Caucasian male over the age of forty who was employed by Optum, a subsidiary of UnitedHealth Group ("UnitedHealth"), at all times relevant to his Complaint. (Doc. 1, ¶¶ 5–7). Since 1995, UnitedHealth has required employees (including employees of its subsidiaries) to submit employment-related disputes to binding arbitration as a condition of employment. (Doc. 7-1 at 6, ¶ 12; at 20, ¶ E). Loftus began working for UnitedHealth on or around September 3, 1996, and then moved to Optum,[1] where he rose to the title of Regional Vice President of Contracting and Provider Relations for the Southeast Region. (Doc. 1, ¶¶ 7–8). According to Loftus, there were five Regional Vice Presidents in the country: four women and him. *Id.*, ¶ 8.

Loftus's Complaint alleges that Optum fostered a culture hostile to male employees, consistently affording preferential treatment to female colleagues, *id.*, ¶¶ 9–10, and firing men who were performing better than women, *id.*, ¶ 11. Loftus alleges that he complained to Optum's exclusively-female senior management, *id.*, ¶¶ 9, 12, which subsequently used his involvement in an internal dispute concerning a female employee as a pretext for firing him, *id.*, ¶¶ 14–21. Loftus claims that "Optum was looking for a way to get rid of [him] due to his continual complaints of the rampant gender discrimination" and that, after terminating him, it replaced him

---

[1] Loftus asserts, and Optum does not dispute, that Optum was founded in 2011. (Doc. 17 at 9).

with a younger, less-qualified woman. *Id.*, ¶ 21. Based on the above, Loftus asserts three claims: gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *id.*, ¶¶ 22–43, and age discrimination under the Alabama Age Discrimination in Employment Act, Ala. Code §§ 25-1-20–29 (1975), *id.*, ¶¶ 44–50.

B.  <u>The Arbitration Documents: The Application and the Acknowledgement</u>

In its Motion, Optum argues that Loftus has twice consented to UnitedHealth's mandatory Arbitration Policy (the "Policy"), once on his 1996 job application (the "Application") and again in 2005 by electronically signing a form acknowledging his consent to the Policy (the "Acknowledgement"). (Doc. 7 at 1).

The Application is styled "Employment Application" and bears the handwritten name "Edward Patrick Loftus" and the UnitedHealth Group name and logo. (Doc. 7-1 at 9). After the personal identifying information and references common to all job applications, *id.* at 10–11, the Application concludes with a section captioned "Authorization and Acknowledgement" just before the signature block, *id.* at 12. The pertinent language from this section is as follows:

> I understand that UnitedHealth Group has adopted alternative dispute resolution procedures, including an Employment Arbitration Policy, to resolve any dispute which may arise related to my employment or termination of employment. **I understand that arbitration is the exclusive forum for the resolution of employment related disputes which are based on a legal claim and that arbitration decisions are final and binding upon both myself and UnitedHealth Group.** I agree to comply with UnitedHealth Group's Internal Dispute

> Resolution policy and UnitedHealth Group's Employment Arbitration
> Policy in any covered employment dispute with UnitedHealth Group.

*Id.* Although the Application refers to the Policy and summarizes its ultimate significance—UnitedHealth employees must submit all employment-related disputes to binding arbitration—it does not reproduce it, *see id.*, and Loftus claims that he never received a copy of it, (doc. 17-1, ¶ 3). Loftus also claims that he did not know what arbitration was in 1996 and that the "HR person . . . was quickly pointing at the different places that needed to be signed without giving [him] an opportunity to read." *Id.* The Application bears the signature of "Edward P. Loftus," (doc. 7-1 at 12), and Loftus admits that he voluntarily signed it, (doc. 17-1, ¶ 3).

In addition to the Application from 1996, Optum argues that Loftus agreed to arbitration again in 2005 on a digital form that set out the Policy and then solicited his electronic signature as an acknowledgement that he had read it and agreed to its terms. (Doc. 7 at 3). The Acknowledgement begins with the following:

**UnitedHealth Group Employment Arbitration Policy Acknowledgement Form**

EDWARD P LOFTUS

Review and Acknowledge at the bottom of this page

UnitedHealth Group Employment Arbitration Policy

(Doc. 7-1 at 16). After this header, the rest of the Acknowledgement sets out the Policy—the same one referenced in the Application that Loftus signed in 1996[2]—and then solicits Loftus's electronic signature to confirm that he accepts its terms and agrees to be bound by them. *Id.* at 16–21. The Policy begins by establishing that, any time it refers to "UnitedHealth Group," this encompasses "UnitedHealth Group Incorporated and its subsidiaries."[3] (Doc. 7-1 at 16, ¶ A). The Policy includes the following, with the emphasis supplied: "This Policy is a binding contract between UnitedHealth Group and its employees. **Acceptance of employment or continuation of employment with UnitedHealth Group is deemed to be acceptance of this Policy.**"[4] *Id.*

In the subsection captioned "**SCOPE OF POLICY**," the Policy states that it "creates a contract requiring both parties to resolve most employment-related disputes . . . that are based on a legal claim through final and binding arbitration," which is the "exclusive forum for the resolution of such disputes."[5] *Id.*, ¶ B. A

---

[2] The Acknowledgement states that it refers to the same Arbitration Policy that became effective for all UnitedHealth employees on January 1, 1996, (doc. 7-1 at 16), before Loftus began working for UnitedHealth on or around September 3, 1996, (doc. 1, ¶ 7).

[3] There is no qualifying language to suggest that this is limited to the subsidiaries in existence at the time the Acknowledgement was signed, (*see* doc. 7-1 at 16), and so it is immaterial that, as Loftus points out, (doc. 17-1 at 9), the Acknowledgement predates Optum's founding by six years.

[4] This includes former employees, such as Loftus. (Doc. 7-1 at 21 n.1).

[5] Although the Policy specifically exempts certain disputes from mandatory arbitration, (doc. 7-1 at 16), none of these exceptions are applicable here.

dispute is "based on a legal claim and is subject to this Policy if it arises from or involves a claim under any federal, state or local statute, ordinance, regulation or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment . . ." *Id.* Simply put, the Policy applies to "any dispute UnitedHealth Group might have with a current or former employee which arises or relates to employment." *Id.* The Policy specifically states that employment disputes arising under Title VII of the Civil Rights Act of 1964 are subject to such mandatory arbitration, *id.*, and establishes extensive procedural guiderails for such arbitration, *id.* at 17–20. The Policy closes by noting that it became effective on January 1, 1996, for all "employees of UnitedHealth Group or its subsidiaries." *Id.* at 20–21, ¶ E. After laying out the Policy in its entirety, the Acknowledgement concludes by soliciting Edward P. Loftus's electronic signature to verify that he has "read and agree[s]" to the Policy outlined above:

EDWARD P LOFTUS

| I have read and agree to the above | **Date Received:** | 11/29/2005 |

**Thank You. Your acknowledgement has been captured. No further action is needed.**

By selecting the "I have read and agree to the above" button, you are signing this agreement electronically. You agree that your electronic signature is the legal equivalent of your manual signature on this Agreement.

*Id.* at 20. The box under the name "Edward P. Loftus" is blank, *see id.*, but it clearly says "11/29/2005" next to "Date Received" and has a message saying, "Thank You. Your acknowledgement has been captured. No further action is needed." *Id.*

In support of its Motion to Compel Arbitration, Optum submitted a sworn declaration from Susan Weedman, Vice President of UnitedHealth's People Team, to offer more insight on the Acknowledgement and how UnitedHealth's electronic records prove that Loftus electronically signed it, despite the empty signature box. (Doc. 7-1 at 2–7). Weedman testified that UnitedHealth uses a computer software called PeopleSoft Human Resources Management System ("HRMS") to digitally distribute its written employment policies and then track when an employee electronically signs to acknowledge his or her consent to be bound by those policies. *Id.* at 3, ¶ 6. All UnitedHealth employees—including Loftus—receive a preset password for HRMS that they are required to change to a unique password of their own choosing the first time they log in. *Id.* at 5, ¶ 9. Weedman testified that "[e]mployees are unable to proceed without first changing the password. Other employees of [UnitedHealth] do not have access to an employee's unique password once it is changed." *Id.* Thus, if an employee is logged into HRMS and doing anything—such as reading and signing the Acknowledgement—it means that he or she must have changed the password to one unique and known only to him or her. HRMS allows UnitedHealth "to monitor and confirm that a particular employee

7

accesses these records and electronically confirms receiving an agreement by virtue of an employee identification number unique to that employee, as well as an employee-specific password that the employee chooses." *Id.* at 4, ¶ 7.

Weedman testified that, after logging in with his or her unique password and employee identification number, there are two indicators that an employee electronically signed the Acknowledgement: when an employee logs in, but before electronically signing, there is no date listed next to "Date Received" and no message affirmatively acknowledging the employee's signature below the "Date Received" field. *Id.* at 5, ¶ 10. It is only *after* an employee manually types his or her name into the signature box and clicks "I have read and agree to the above," that two changes occur: (1) the date of his or her acceptance is digitally populated next to the "Date Received" line and (2) a message appears that reads "Thank you. Your acknowledgement has been captured. No further action is needed." *Id.* Weedman testified that these two changes—the date and the message—*only* occur after an employee electronically signs the Acknowledgement. *Id.*

Weedman testified that UnitedHealth's records show that Loftus's unique employee identification number and password opened and electronically signed the Policy on November 29, 2005. *Id.* at 5–6, ¶¶ 8, 11. As the screenshot reproduced above makes clear, both of the indicators that the employee has read and signed the Acknowledgement—the populated date and the message confirming acceptance—

are present on Loftus's form. Weedman's testimony does not explain the absence of a name in the signature line, but her affirmative testimony does tend to demonstrate that these changes could only have occurred if Loftus had signed into HRMS with his unique employee identification number and password and electronically signed the Acknowledgement. Agreeing to the Policy has been an explicit condition of employment by UnitedHealth and its subsidiaries since 1995. *Id.* at 6, ¶ 12. In its Motion to Compel Arbitration, Optum argues that these two documents—the Application that Loftus admits he signed and the Acknowledgement that internal records demonstrate that *only* he could have signed—require Loftus to arbitrate all of the claims asserted in his Complaint.

### STANDARD OF REVIEW

The Eleventh Circuit has held that a court considering a motion to compel arbitration must apply a "summary judgment-like standard." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Under this standard, a court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." *Id.* (quoting Fed. R. Civ. P. 56(a)). *See also Reilly v. Avery Auto Sales, Inc.*, No. 1:21-cv-857, 2021 WL 6050706, at *2 (N.D. Ala. Dec. 21, 2021).

The party opposing a motion to compel arbitration must produce "sufficient evidence" that there is not a valid, enforceable arbitration agreement "for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (citation omitted). "If the evidence is merely colorable or is not significantly probative," the nonmoving party has not created a genuine fact question, *id.* (citations omitted), and the court should grant the motion to compel arbitration. This court has previously emphasized that this standard means the nonmovant must do more than simply claim that he did not agree to arbitrate:

> The party opposing the motion must present evidence that the arbitration agreement is not valid or does not apply to the dispute in question. Conclusory allegations without specific supporting facts have no probative value for a party opposing a motion to compel arbitration. The nonmoving party must come up with evidence that negates the version of events alleged by the moving party. A dispute is considered genuine if it is supported by the evidence presented or is created by evidence that is significantly probative.

*Falkner v. Dolgencorp, LLC*, No. 2:19-cv-598, 2020 WL 470292, at *1 (N.D. Ala. Jan. 29, 2020) (internal citations and quotation marks omitted).

## ANALYSIS

The court finds that Optum's Motion to Compel Arbitration is due to be granted because there is no genuine dispute that all of Loftus's claims fall within the scope of UnitedHealth's valid, enforceable, and mandatory arbitration policy. "The validity of an arbitration agreement is generally governed by the Federal Arbitration

10

Act," *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005), which Congress enacted in 1925 as "a response to hostility of American courts to the enforcement of arbitration agreements," *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). To give effect to this purpose, the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), "compels judicial enforcement of a wide range of written arbitration agreements," *id.*, and the Supreme Court has endorsed "a healthy regard for the federal policy favoring arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

The coverage provision of the FAA states that any arbitration provision in a "contract evidencing a transaction involving commerce . . . **shall** be valid, irrevocable, and enforceable."[6] 9 U.S.C. § 2 (emphasis added). The Supreme Court has held that this provision of the FAA "reflect[s] both a liberal federal policy favoring arbitration, **and the fundamental principle that arbitration is a matter of contract**." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and quotation marks omitted) (emphasis added). "In line with these

---

[6] The Supreme Court "has interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce' which allows the enforcement of arbitration provisions within the broadest permissible exercise of Congress' Commerce Clause power." *Reilly*, 2021 WL 6050706, at *2 n.2 (quoting *Citizens Bank v. Alafabco Inc.*, 539 U.S. 52, 56 (2003)) (some internal quotation marks omitted). The Supreme Court "has stated that employment contracts . . . are included within the meaning of a contract involving commerce," *Lucas v. Iasis Healthcare LLC*, No. 8:14-cv-942-T-30TBM, 2014 WL 2520443, at *1 (M.D. Fla. June 4, 2014) (citing *Circuit City Stores, Inc.*, 532 U.S. at 113–14), and so UnitedHealth's Policy properly falls under the FAA.

principles, courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *Id.* (citations omitted). Thus, a court ruling on a motion to compel arbitration must decide (1) whether a valid arbitration agreement exists between the parties and, if so, (2) whether the disputed claim fall within the scope of that agreement. *Reilly*, 2021 WL 6050706, at *2.[7] If there is no genuine dispute that both conditions are met, the FAA requires the court to enforce the agreement and "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

A. Question One: Was There a Valid Arbitration Agreement Between Loftus and Optum?

"The threshold question of whether an arbitration agreement exists is 'simply a matter of contract.'" *Reilly*, 2021 WL 6050706, at *3 (quoting *Bazemore*, 827 F.3d at 1329). To decide whether the parties formed an enforceable agreement to arbitrate, the court looks to Alabama contract law, *id.* at *2, which requires an offer, an

---

[7] In his opposition to Optum's Motion, Loftus cites *Chastain v. Robinson-Humphrey Co., Inc.*, 957 F.2d 851 (11th Cir. 1992), *overruled by Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016), for the proposition that a party opposing arbitration must (1) unequivocally deny agreeing to arbitrate and (2) produce some evidence to substantiate this denial, (doc. 17 at 6–8). Ostensibly following *Chastain*, Loftus repeatedly states that he unequivocally denies agreeing to arbitrate, *id.* at 3, 5, 6, 7; doc. 17-1, ¶¶ 2, 3, 4, 6, but he overlooks the fact that the Eleventh Circuit has rejected the two-part *Chastain* test for opposing arbitration, *Larsen v. Citibank FSB,* 871 F.3d 1295, 1303 n.1 (11th Cir. 2017); *Falkner*, 2019 WL 13224776, at *1. Rather than the two-part *Chastain* test requiring an unequivocal denial of an agreement to arbitrate, *Chastain*, 957 F.2d at 854, the court "defer[s] solely to applicable state-law principles in determining the quality and quantum of evidence required to deny or prove the existence of an agreement," *Larsen,* 871 F.3d at 1303 n.1. Put differently, if the undisputed evidence shows the existence of a valid arbitration agreement that covers Loftus's claims, it is immaterial whether he unequivocally denies agreeing to arbitrate.

acceptance, consideration, and mutual assent, *see, e.g.*, *Am. Com. Bank, NA v. Progress Leasing, LLC*, No. 2:23-cv-117, 2023 WL 8518216, at \*3 (N.D. Ala. Aug. 22, 2023) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So.3d 872, 880 (Ala. 2009)). Optum argues that, "[b]ecause all elements of a contract under Alabama law are present, Plaintiff and Defendant validly entered into an arbitration agreement." (Doc. 7 at 7). The court agrees and finds that Loftus has not created a "genuine dispute as to any material fact concerning the formation of such an agreement." *Bazemore*, 827 F.3d at 1333.

i.      Offer and Acceptance

The first element of a contract needed to create a binding arbitration agreement between Loftus and Optum is not disputed: UnitedHealth (Optum's parent company) offered both the Application and the Acknowledgement to Loftus. (Doc. 7 at 6). Loftus does not deny this, and he has not attempted to create a fact issue on the question of offer. The court therefore accepts this as proven.

The next element—acceptance of that offer—is the parties' primary source of disagreement. Optum argues that Loftus accepted arbitration by signing the Application and the Acknowledgement and then continuing to work for UnitedHealth. (Docs. 7 at 6; 20 at 5). Optum supports this position with (1) the signed Application, (doc. 7-1 at 12), which Loftus admits is genuine, (doc. 17-1, ¶ 3), (2) Weedman's testimony establishing that Loftus electronically signed the

13

Acknowledgement in 2005, (doc. 7-1 at 2–7), and (3) the fact that he continued to work for UnitedHealth after signing these documents stating that arbitration is a condition of employment, (doc. 20 at 5). Although Loftus attempts to rebut these arguments and create a fact question on the issue of acceptance, his arguments are unpersuasive.

First, Loftus argues that signing the Application in 1996 did not oblige him to follow the Policy because he did not sign or a receive a copy of the Policy itself, (docs. 17 at 8–10; 17-1, ¶ 3). The FAA does not require an arbitration agreement to be signed to be enforceable, *Caley*, 428 F.3d at 1368, and longstanding Alabama law holds that, by signing the Application, he also consented to be bound by the Policy explicitly referenced therein. The Alabama Supreme Court summarized the principle of contract law that undercuts Loftus's argument on this point:

> A party to a contract is responsible for reading the contract. [W]hen a competent adult, having the ability to read and understand an instrument, signs a contract, he will be held to be on notice of all the provisions contained in that contract, including an arbitration provision, and will be bound thereby.

*Advance Tank and Constr. Co., Inc. v. Gulf Coast Asphalt Co., LLC*, 968 So.2d 520, 528 (Ala. 2006) (citations and internal quotation marks omitted). This "duty-to-read rule places a duty on the signee to read a contract before signing it, rather than creating some duty on the defendant." *Brickhouse Cap., LLC v. Coastal Cryo AL, LLC*, 393 So.3d 467, 476 (Ala. 2023) (citing *Alfa Life Ins. Corp. v. Reese*, 185 So.3d

14

1091, 1104 (Ala. 2015)) (emphasis omitted). Thus, a party who voluntarily signs a contract is deemed to have read and consented to its terms, even if he did not actually do so. The Alabama Supreme Court has expressly held that this principle means that if a person signs one contract that, by its plain terms, also obligates him to abide by the terms of a second contract, he is bound to follow both, even if he did not ever see or read the second one, *see, e.g.*, *Am. Bankers Inc. Co. of Fla. v. Tellis*, 192 So.3d 386, 390–91 (Ala. 2015) (collecting cases). That is precisely what happened here: Loftus admits he signed the Application, (doc. 17-1, ¶ 3), which clearly states that all employees and applicants understand they are bound by the Policy making arbitration "the **exclusive forum** for the resolution of employment related disputes" based on a legal claim, (doc. 7-1 at 12) (emphasis added). By signing the Application, which, it bears repeating, Loftus admits he did voluntarily, (doc. 17-1, ¶ 3), Alabama law holds that he read it, *Brickhouse Cap., LLC*, 393 So.3d at 476, and accepted the terms of the Policy plainly adopted therein, *Am. Bankers Inc. Co. of Fla.*, 192 So.3d at 390–91. Loftus may now—thirty years later—claim that he "did not and would not agree to arbitration," (doc. 17-1, ¶ 3), but, under controlling Alabama law, his signature on the Application is proof that he did, *Advance Tank and Constr. Co., Inc.*, 968 So.2d at 528.[8] Thus, by signing the Application, Loftus

---

[8] Loftus testified that he "was not given an opportunity to fully read the [Application] and was hurried along to quickly sign the documents," (doc. 17-1, ¶ 3), but he never denies voluntarily signing the Application, which is the determinative point, *Advance Tank and Constr. Co., Inc.*,

accepted the terms of the Policy, regardless of whether he ever read it, and he has not created a fact question on this point.[9]

Loftus's attempts to undermine Optum's reliance on the Acknowledgement are equally unpersuasive and do not create a genuine dispute of material fact as to whether he accepted the terms requiring him to arbitrate. Although he advances a few different theories, he has not created a fact question to rebut Optum's evidence that he did indeed electronically sign the Acknowledgement and, thereby, consent to the Policy. He points out that the Acknowledgement does not bear his signature, (doc. 17-1, ¶ 4), but, as noted *supra*, the FAA does not require an arbitration agreement to be signed to be enforceable, *Caley*, 428 F.3d at 1368. Loftus urges the court to disregard Weedman's testimony because he does not know her and she has no firsthand knowledge of his thoughts or actions, (doc. 17-1, ¶ 5), but this does nothing to create a genuine dispute of material fact rebutting her testimony that UnitedHealth's records prove that he electronically signed the Acknowledgement. Nothing in Weedman's testimony requires a personal acquaintance between the two, (*see generally* doc. 7-1 at 2–7), and Loftus's reliance on this point cannot create a

---

968 So.2d at 528. Indeed, the Alabama Supreme Court has explicitly held that, even if a party feels rushed into signing a contract, he is still responsible for slowing down the process and refusing to sign until he has read the whole document. *Ex parte Perry*, 744 So.2d 859, 863 (Ala. 1999).

[9] Loftus also implies that the Application cannot bind him because he signed it thirty years ago, (docs. 17 at 1; 17-1, ¶ 3), but he cites no authority to support the contention that the passage of time can invalidate an otherwise valid contract.

genuine factual dispute to rebut her testimony that the internal records demonstrate that he electronically signed the Acknowledgement.

Loftus's primary argument in opposition to the Acknowledgement is to insist that he never agreed to arbitrate, (doc. 17-1, ¶¶ 2, 4, 6, 7), but, crucially, he never denies *electronically signing* the Acknowledgement and has not created a fact issue on this point.[10] His assertions that he never agreed to arbitrate are general and non-specific enough to be equally understood as meaning that he never consciously assented to the idea of arbitration, and Optum is correct that Loftus "does not refute the clear evidence [from Weedman's testimony] that [he], and [he] alone, electronically agreed to arbitration in November of 2005" with his electronic signature. (Doc. 20 at 7). As summarized above, Weedman testified that UnitedHealth records show that Loftus's unique employee identification number logged into his account using a password known only to him and electronically signed the Acknowledgement, as evidenced by the date stamp and acceptance-message. (Doc. 7-1 at 2–7). Loftus merely speculates that this might, possibly, have been done by someone else who could, theoretically, have accessed his computer, (doc. 17-1, ¶ 5), an argument that other courts have rejected as insufficient to create

---

[10] The closest Loftus comes is when he states in his brief that he did not "indicate through electronic or computer entries that he would agree to arbitration," (doc. 17 at 4), but his only support for this contention is to cite his declaration in which he vaguely asserts that he did not agree to arbitrate, (doc. 17-1, ¶ 4).

a fact question, *see e.g.*, *Ramsey v. Ayvaz Pizza LLC*, No. 1:23-cv-4801, 2024 WL 4356578, at *4 (N.D. Ga. Sept. 30, 2024) (rejecting plaintiff's speculation that someone else signed into his account because "[t]here is no evidence that anyone had access to [the plaintiff's] private credentials and that they used those credentials to log in and sign the  . . . arbitration agreement"). As Optum correctly points out, nowhere in his response to Optum's Motion does Loftus deny electronically signing the Acknowledgement on November 29, 2005, nor has he rebutted Weedman's testimony that he did so. (Doc. 20 at 7) *See also Wilson v. Alorica, Inc.*, No. 2:17-cv-2182, 2018 WL 2229703, at *3 (N.D. Ala. May 16, 2018) (plaintiff did not raise a genuine dispute of fact to defeat a motion to compel arbitration because he merely claimed not to remember signing and did "not unequivocally dispute that he clicked the box acknowledging the [arbitration] agreement"). Optum is correct that Loftus "fails to actually refute [its] evidence" that he electronically signed the Acknowledgement, (doc. 20 at 6), because he relies on conclusory allegations without specific supporting facts, which have no probative value for a party opposing a motion to compel arbitration, *Bazemore*, 827 F.2d at 1333. The court therefore finds that Optum has succeeded in demonstrating the first two elements of an enforceable arbitration agreement—offer and acceptance—and that Loftus has failed to demonstrate a factual dispute in opposition.

    ii.      Consideration

18

Under Alabama contract law, consideration requires that "a performance or a return promise . . . be bargained for, and a performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Smith v. Wachovia Bank, N.A.*, 33 So.3d 1191, 1197–98 (Ala. 2009) (quoting Restatement (Second) of Contracts § 71(1)) (emphasis, internal quotation marks, and brackets omitted). In its Motion, Optum argues that both the Application and the Acknowledgement were supported by consideration because the Alabama Supreme Court "has consistently held . . . that providing continued at-will employment is sufficient consideration to make an employee's promise to arbitrate binding." (Doc. 7 at 6) (citing *Scurtu v. Int'l Student Exch.*, 523 F. Supp. 2d 1313, 1321 (S.D. Ala. 2007) ("[U]nequivocal Alabama precedents directly . . . hold[] that continued at-will employment satisfies the consideration requirement for an arbitration agreement.")). *See also Ex parte McNaughton*, 728 So.2d 592, 595–96 (Ala. 1998) (The Alabama Supreme Court "has consistently held that an employer's providing continued at-will employment is sufficient consideration to make an employee's promise to his employer binding."). Loftus does not dispute this point, (*see generally* doc. 17), and the court finds that there is no dispute that the Application and Acknowledgement were supported by adequate consideration, as required for a contract in Alabama, *Am. Com. Bank*, 2023 WL 8518216, at *3.

19

iii.    Mutual Assent

The final element of an enforceable contract in Alabama is mutual assent to its terms. *Id.* Assent "must be manifested by *something*." *S. Energy Homes, Inc. v. Hennis*, 776 So.2d 105, 108 (Ala. 2000). Ordinarily, the parties manifest their assent by a signature, but they may also do so by their conduct. *Id.*

Optum argues that Loftus assented to the Policy by signing the Application and the Acknowledgement, (doc. 7 at 6), and then continuing his employment afterwards, (doc. 20 at 5). To attempt to create a fact issue on this question, Loftus argues that he did not assent to the Policy because "[n]o signed agreement to arbitrate exists in this case," (doc. 17 at 8–9), but this is unavailing for all the reasons set out above: (1) the FAA does not require an arbitration agreement to be signed to be enforceable, *Caley*, 428 F.3d at 1368, (2) Loftus admits he signed the Application, which obligates him to follow the Policy explicitly referenced therein, and (3) Optum's unrebutted evidence also establishes that he electronically signed the Acknowledgement. Loftus has therefore failed to create genuine dispute of fact on the question of whether he and Optum assented to the same terms. *S. Energy Homes, Inc.*, 776 So.2d at 108.

For the reasons set forth above, the court finds that Optum has demonstrated each element of an enforceable arbitration provision under Alabama law: offer, acceptance, consideration, and mutual assent. *Am. Com. Bank*, 2023 WL 8518216,

at *3. Loftus has not created a genuine issue of material fact on this question because he relies solely on "conclusory allegations without specific supporting facts [which] have no probative value" for a party arguing no arbitration agreement exists. *Bazemore*, 827 F.3d at 1333. The FAA and the strong federal policy in favor of arbitration require this court to enforce Optum's Policy, 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24, if Loftus's claims fall within its scope, *Reilly*, 2021 WL 6050706, at *2.

B. <u>Question Two: Do Loftus's Claims Fall Within the Scope of the Arbitration Policy?</u>

Because the court finds that there is a valid arbitration agreement between the parties, the court will grant Optum's Motion to Compel Arbitration if it also finds that Loftus's claims fall within the scope of that Policy. *Id*. The "scope of an arbitration provision includes whether a particular claim or dispute falls within the language of what the provision requires to be arbitrated." *Wiggins v. Warren Averett, LLC*, 307 So.3d 519, 522 (Ala. 2020) (citations and quotation marks omitted). There can be no question that Loftus's claims are covered by Optum's Policy and he does not assert otherwise.

The Policy requires all employees and former employees of UnitedHealth and its subsidiaries to resolve "employment-related disputes . . . that are based on a legal claim through final and binding arbitration." (Doc. 7-1 at 16, ¶ B). For purposes of the Policy, a dispute is based on a legal claim if it "arises from or involves a claim

21

under any federal [or] state . . . statute . . . or common law doctrine regarding or relating to employment discrimination, terms and conditions of employment, or termination of employment." *Id.* By its plain terms, this explicitly includes claims brought under Title VII of the Civil Rights Act, any attendant retaliation claims, and state anti-discrimination law. *Id.* In his Complaint, Loftus asserts gender-based discrimination and retaliation in violation of Title VII of the Civil Rights Act, (doc. 1, ¶¶ 22–43), as well as a claim under Alabama's Age Discrimination in Employment Act, *id.*, ¶¶ 44–50, all arising from his employment and termination by Optum, which "fall[] within the language of what the [Policy] requires to be arbitrated," *Wiggins*, 307 So.3d at 522. In his Opposition, Loftus never disputes that, if the Application and Acknowledgement do create an arbitration agreement, all of his claims would fall within its scope. (*See generally* doc. 17). Because the court finds that Loftus and Optum are bound by a valid and enforceable arbitration agreement that covers all of the claims in the Complaint, (doc. 1), the court is compelled to order the parties to arbitration, *Reilly*, 2021 WL 6050706, at *2. Doing so is in line with both the plain text of the FAA, *see* 9 U.S.C. § 2, but also the "liberal federal policy favoring arbitration," *AT&T Mobility LLC*, 563 U.S. at 339.

C. <u>The Policy is Not Unconscionable</u>

Although Loftus argues that the Application and Acknowledgement do not create an arbitration agreement, he also argues, in the alternative, that if they do, it

should not be enforced because its terms are unconscionable. (Doc. 17 at 10–11).

The FAA requires enforcement of arbitration agreements "save upon such grounds

as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2, and the

Eleventh Circuit has held that the common law doctrine of unconscionability is a

defense to an arbitration agreement under the FAA, *see, e.g.*, *In re Checking Acct.*

*Overdraft Litig. MDL No. 2036*, 685 F.3d 1269, 1278 (11th Cir. 2012). The Alabama

Supreme Court recently summarized unconscionability thus:

> In Alabama, a contract is unconscionable when (1) its terms are grossly
> favorable to a party that has (2) overwhelming bargaining power. *SCI*
> *Alabama Funeral Servs., LLC v. Hinton*, 260 So. 3d 34, 39 (Ala.
> 2018) (citation omitted). The first prong represents substantive
> unconscionability and the second represents procedural
> unconscionability. *Id.* at 39. **The challenger must satisfy both prongs**
> **to establish unconscionability.** *Blue Cross Blue Shield of Alabama v.*
> *Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005).

*CNU of Ala., LLC v. Cox*, 416 So.3d 154, 161 (Ala. 2024) (emphasis added).

Ultimately, under Alabama law, a contract or any provision therein is

unconscionable if "no man in his sense and not under delusion would make [it] on

the one hand, and . . .  no honest and fair man would accept." *S. United Fire Inc. Co.*

*v. Howard*, 775 So.2d 156, 163 (Ala. 2000) (citation omitted). The court finds that

Loftus's arguments that the Policy was substantively unconscionable are meritless

and that he has not even attempted to argue that it was procedurally unconscionable.

On the question of substantive unconscionability, Loftus's only argument that

the Policy's "terms are grossly favorable" to Optum, *CNS of Ala.*, 416 So.3d at 161,

23

is to point to the parameters it places on discovery during the arbitration process, (doc. 17 at 10–11), but the court cannot find that these restrictions render the Policy unconscionable. Although the terms of the discovery are narrower than in the usual course under the Federal Rules of Civil Procedure, the Supreme Court held that this is part and parcel of arbitration, in which "a party trades the procedures and opportunity for review of the courtroom for . . . simplicity, informality, and expedition." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (citation omitted). Moreover, the terms Loftus claims are unconscionable are equally binding on both parties, (doc. 7-1 at 18, ¶ 14.a), and the neutral arbitrator is expressly authorized to resolve all discovery disputes between the parties, *id.* at 19, ¶ e. Loftus claims that the terms are favorable to Optum because it will already have access to the internal records and personnel to supplement its case outside of the discovery provisions, (doc. 17 at  11), but this is simply the nature of voluntarily agreeing to arbitrate with one's employer, as Loftus did, *supra*, and Alabama courts regularly uphold arbitration provisions between an employer and employee, *see, e.g.*, *McNaughton*, 728 So.2d at 599. Moreover, even if the court found these discovery restrictions unconscionable, the Policy explicitly provides that "[i]f any portion or provision . . . is held to be void or unenforceable, the remainder of [the] Policy will be enforceable and any part may be severed from the remainder, as appropriate." (Doc. 7-1 at 20, ¶ 23).

To prove the Policy unconscionable, Loftus was also required to demonstrate that it was procedurally unconscionable, *CNS of Ala.*, 416 So.3d at 161, but he has not done so or even attempted to, (*see* doc. 17 at 10–11). Procedural unconscionability means that one party has "overwhelming bargaining power" compared to the other. *CNS of Ala.*, 416 So.3d at 161. To the extent that Loftus hopes this court will infer disparate bargaining power solely because Optum was his employer, this court has previously rejected such an argument:

> Alabama courts assume that an individual who accepts an arbitration agreement in exchange for a good or service "has weighed the costs of not having the good or service and has found those costs to outweigh the value to him, at that time, of the perceived benefit of a future jury trial in the occurrence of a future dispute." *See Serv. Corp. Int'l v. Fulmer*, 883 So. 2d 621, 633 n.15 (Ala. 2003). **Therefore, without specific allegations about the procedural defects in the contract formation process, Alabama law essentially presumes that [Loftus] made a meaningful decision to arbitrate his claims in exchange for employment.**

*Stuckey v. Brookdale Emp. Servs., LLC*, No. 5:21-cv-1717, 2022 WL 1156962, at *7 (N.D. Ala. Apr. 19, 2022) (emphasis added). Accordingly, Loftus has demonstrated neither substantive nor procedural unconscionability and the court does not find that the Policy contains terms that "no man in his sense and not under delusion would make . . . and . . . no honest and fair man would accept," *S. United Fire Inc. Co.*, 775 So.2d at 163. Unconscionability may serve as a defense against an arbitration provision, but, contrary to Loftus's arguments, (doc. 17 at 10 – 11), it is inapplicable here.

25

## CONCLUSION

A court must grant a motion to compel arbitration if, under state contract law, there is a valid arbitration agreement between the parties and the dispute falls within its scope. Optum has carried its burden on both of these prongs and Loftus has failed to create a genuine dispute of material fact to warrant sending the question to a jury. Accordingly, and for all the reasons set out above, the court **ORDERS** as follows:

1.    Defendant Optum Services, Inc.'s Motion to Compel Arbitration, (doc. 7), is **GRANTED** and the parties are **ORDERED** to submit their dispute to arbitration. The court **STAYS** this case and **ORDERS** the parties to file a joint status report on or before **September 28, 2026**, **and every ninety days thereafter**. The court retains jurisdiction over this case for post-arbitration proceedings authorized by the Federal Arbitration Act. 9 U.S.C. §§ 9–11.

2.    Plaintiff Edward Loftus's Motion for Discovery Related to Arbitration, (doc. 16), is **DENIED.**

**DONE** and **ORDERED** on March 27, 2026

_____
**HAROLD D. MOOTY III**
UNITED STATES DISTRICT JUDGE

26